UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAURICE S. VAUGHN, ) | Case No.: 1:12 CV 3135 |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case between Plaintiff Maurice S. Vaughn ("Vaughn" or "Plaintiff") and Defendant the United States of America (the "Government" or "Defendant") is the Government's Motion for Summary Judgment ("Motion") (ECF No. 18). For the following reasons, the court grants the Government's Motion (ECF No. 18).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former Major League Baseball ("MLB") player. (Vaughn Decl. at ¶ 2.) He played MLB from 1991 to 2003, when his career came to an end due to injury. (*Id*.) During his career in MLB and after retirement, Plaintiff utilized professionals to help him manage his financial affairs and prepare his taxes. (*Id*. at ¶ 3.) In May 2004, Plaintiff hired Ra Shonda Kay Marshall ("Marshall") to "assist [him] in budgeting [his] income and expenses and to provide bill payment services." (*Id*. at ¶ 4.) Marshall was previously employed at Omni Elite, a financial management firm in Ohio, where she had provided bill payment and other financial services to Plaintiff. (*Id*.) However, she left the firm to work exclusively for Plaintiff. (*Id*.) Upon hiring Marshall, Plaintiff

signed a Power of Attorney giving her control over his funds and authority to file and pay taxes on his behalf. (*Id*. at ¶ 5.) Plaintiff also entered into an agreement with Marshall's company, RKM Business Services, LLC (RKM"), which provided for Marshall's payment for her financial management services. (*Id*. at ¶ 6.) Additionally, Plaintiff retained a tax accountant, David Krebs ("Krebs") of CPA Advisory Group, Inc., "to provide tax advice, to ensure tax returns were properly filed, and to confirm that [Plaintiff's] tax bills were paid on time." (*Id*. at ¶ 8.)

From May 2004, when Marshall was hired by Plaintiff until her termination, Plaintiff had two bank accounts at U.S. Bank in Columbus, Ohio, one personal account and one business account in the name of Mo Vaughn Investments LLC. (*Id*. at ¶ 9.) Marshall was the sole signatory for each of these accounts in which Plaintiff deposited substantially all of his income. (*Id*.) Therefore, Plaintiff relied on Marshall to write checks on the accounts and to withdraw money from both accounts. (*Id*.) Marshall put Plaintiff on a monthly budget and assured him that she was working with Krebs to prepare, file, and pay his taxes. (*Id*. at ¶ 10.) Utilizing this method of reliance on Marshall and Krebs, Plaintiff timely filed his 2004, 2005, and 2006 tax returns and paid his 2004 and 2005 taxes that he owed. (*Id*.) However, Plaintiff's 2006 federal income tax liability was not timely paid. (*Id*. at ¶ 14.) Additionally, Plaintiff's 2007 tax return was not timely filed, and his 2007 federal income tax liability was not timely paid. (*Id*.)

In late 2008, Plaintiff decided to mange his money himself and terminated Marshall. (*Id*. at ¶ 11.) At this time, Plaintiff hired new tax advisors and also terminated Krebs. (*Id*.) After terminating Marshall and Krebs, Plaintiff reviewed his bank statements for 2008 and realized that Marshall had embezzled millions of dollars from him and used his funds to pay her personal expenses. (*Id*. at ¶ 12.) Plaintiff hired a forensic accountant to further investigate the embezzlement and found that between 2004 and 2008, Marshall had embezzled more than $2.77 million from him.

(*Id.* ) Plaintiff filed suit against Marshall personally and her company, RKM, and has outstanding judgments against each in the amounts of $1.5 million and $3.5 million, respectively. (*Id.* at ¶ 13.)

In 2009, Plaintiff discovered that his 2007 tax return was not filed and that his 2006 and 2007 federal income tax liabilities were not paid. (*Id.* at ¶ 14.) Upon this discovery, Plaintiff re-filed his 2006 tax return on January 2, 2009, and filed his 2007 tax return on April 2, 2009. (Cole Decl. Exs. 1-2.) Pursuant to 26 U.S.C. § 6651, the Internal Revenue Service ("IRS") assessed penalties against Plaintiff for his failure to timely file and failure to timely pay his tax returns for 2006 and 2007 in the amounts of $1,037,158.25 and $102,106.76, respectively. (Vaughn Decl. at ¶ 14; Fleming Decl. at ¶¶ 6-7 & Exs. E, F.) Plaintiff paid the $102,106.76 penalty to the IRS relating to the 2007 tax year; however, he has not fully paid the 2006 penalty. (Vaughn Decl. at ¶ 18.) Plaintiff appealed the 2007 penalty with the IRS and that appeal was denied on June 19, 2012. (*Id.* at ¶ 19.)

Subsequently, on December 28, 2012, Plaintiff initiated this action against the Government, claiming that he is entitled to declaratory judgment that his failure to file his tax returns and failure to pay his tax liability were due to reasonable cause and not due to willful neglect and as a result, the penalties assessed by the Government violate 26 U.S.C. § 6651(a)(1) and (2). Also Plaintiff sought recovery of the 2007 penalty paid to the IRS and the amount paid to the IRS toward the 2006 penalty. On April 8, 2013, the Government filed a Motion to Dismiss Count 1 of Plaintiff's Complaint (ECF No. 13), stating that the court has no jurisdiction over the claims in Count 1 regarding the 2006 tax penalties because Plaintiff has not fully paid the 2006 penalty and has not appealed payment of the 2006 penalty with the IRS. (Gov't Mot. to Dismiss at 1, ECF No. 13.) The court granted this Motion on May 6, 2013. (ECF No. 15.) Thus, Count 2, wherein Plaintiff seeks recovery of the 2007 penalty paid to the IRS, is the only matter presently before the court.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir. 2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the

evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

Pursuant to 26 U.S.C. § 6651(a)(1) & (2), the IRS is permitted to assess penalties against taxpayers for failure to file a required return and/or failure to timely pay the amount of tax due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Thus, to obtain a refund of these assessed penalties a taxpayer "bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to

reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985). Neither "willful neglect" nor "reasonable cause" is defined in the statute. However, the Supreme Court in *Boyle* defined "willful neglect" as "a conscious, intentional failure or reckless indifference." *Id*. Additionally, the Court stated that to demonstrate "reasonable cause" for a failure to file a required return, "the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time." *Id*. (quoting 26 CFR § 301.6651(c)(1)). Similarly, the regulation provides that "[a] failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship." 26 CFR § 301.6651(c)(1). The Government does not argue that Plaintiff's failure to file his 2007 tax return or failure to pay his 2007 tax liability was due to "willful neglect." Therefore, the question before the court is whether the failure of Plaintiff to timely file his 2007 tax return and his failure to pay his 2007 tax liability were due to "reasonable cause."

The Government, relying on *Boyle*, argues that Plaintiff's contention that his failure to file his 2007 tax return due to his reliance upon a financial advisor whom he trusted to conduct his financial affairs is not sufficient to constitute reasonable cause for the failure to file a return or to pay a tax. (Mot. at 5.) The Government therefore contends that summary judgment must be granted in its favor. (*Id*.) Plaintiff argues that he has shown reasonable cause for failing to file tax returns and pay his taxes. (Pl.'s Mem. in Opp'n at 9.) Plaintiff contends that the facts show that he exercised ordinary business care and prudence in providing for his tax liability by hiring individuals to assist him with his financial affairs. Plaintiff also contends, relying on *In re Am. Biomaterials*

- 6 -

*Corp.*, 954 F.2d 919 (3d Cir. 1992), as discussed below, that Marshall's actions "disabled" him and made him unable to pay his tax liability. The Government replies that Plaintiff cannot demonstrate that he was unable to exercise ordinary business care and prudence because of a disability because being the victim of misconduct by his independent advisors does not make him "disabled." (Gov't Reply at 1.) The Government further replies that even if Plaintiff was unable to timely pay his tax, this is not enough to constitute a disability. (*Id*. at 8.)

In *Boyle*, the Court held that a taxpayer's reliance on an agent to file a tax return does not constitute "reasonable cause" for failure to timely file a tax return. 469 U.S. at 252 ("The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).") Therefore, Plaintiff's reliance on Marshall and Krebs to file his tax return and pay his tax liability alone is not sufficient to constitute reasonable cause for his failure to timely file his 2007 tax return and pay his 2007 tax liability.

However, the Court in *Boyle*, distinguished a taxpayer's reliance on an agent to file a tax return from the possibility of a situation in which a taxpayer's disability alone could constitute "reasonable cause" for late filing of a tax return. *See In re Am. Biomaterials Corp.*, 954 2d at 923; *Conklin Bros. Inc. v. United States*, 986 F.2d 315, 318 (9th Cir. 1993). The Sixth Circuit has stated, that, in leaving open this possibility, the Court "hinted that such a disability must result from circumstances beyond the taxpayer's control (e.g., postal delays, illness), not simply the 'taxpayer's reliance on an agent employed by the taxpayer.'" *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 (6th Cir. 1996) (quoting *Boyle*, 469 U.S. at 248 n.6). In *Valen* , the Sixth Circuit held that a company was not "disabled" where a bookkeeper failed to file the company's tax returns with the

IRS and failed to deposit checks to cover the company's tax liabilities. *Id*. at 1193-94. Instead, the Sixth Circuit stated that, "because the executive officers of the company did retain both oversight of [the agent's] work and ultimate responsibilities for tax liabilities," "[t]he circumstances resulting in the penalty assessment against [the company]...were not beyond the taxpayer's control." *Id*.

Plaintiff contends that his case is similar to *In re Am. Biomaterials Corp*., 954 F.2d 919, where the Third Circuit affirmed a bankruptcy court order denying the government statutory penalties for a company's failure to timely file tax returns and timely pay federal taxes owed finding that the company was "disabled" by the embezzlement of its corporate officers. In *Valen*, the Sixth Circuit distinguished *In re Am. Biomaterials Corp*. stating that, "because the criminal actors in [*In re Am. Biomaterials Corp*.], the corporation's CEO and Chairman of the Board and its CFO treasurer, were the very two individuals with ultimate control over the company's taxpaying activities, the court was willing to conclude that the crimes committed by those individuals actually incapacitated the taxpayer" and gave the company reasonable cause to avoid the late penalty. 90 F.3d at 1194.

The court finds that Plaintiff's case is more similar to *Valen* where the court held circumstances resulting in the penalties were not beyond the taxpayer's control and therefore that the taxpayer was not disabled. Here, Plaintiff is not a corporation that can only act through its agents. Additionally, while Plaintiff signed a Power of Attorney giving authority to an agent and delegated his responsibility for tax liabilities to agents, he still maintained the ultimate responsibility for his tax liabilities, oversight of his agents, and the ultimate control over his taxpaying activities. Thus, the failure to file and pay taxes as a result of the embezzlement by Plaintiff's agent which resulted in penalty assessments against him was not beyond Plaintiff's control and does not render him "disabled." *See Valen Mfg. Co.*, 90 F.3d at 1194; *see also Huffman, Carter & Hunt, Inc. v. United States,* 317 F. Supp. 2d 816, 820-22 (S.D. Ohio 2004) (holding that a taxpayer's agent's

embezzlement did not constitute reasonable cause warranting the abatement of penalties regardless of whether the taxpayer exercised prudence in selecting and monitoring the agent where the agent was an outside firm relied upon by the taxpayer to fulfill his employment tax filing and payment obligations); *see also Conklin Bros.,Inc.*, 986 F.2d at 319 (finding that a company was not disabled from complying timely with its tax obligations by the deficient and improper conduct of its agent where the company maintained control over its agent); *see also Dogwood Forest Rest Home, Inc. v. United States*, 181 F. Supp. 2d 554, 561 (M.D.N.C. 2001) ("A corporation is not disabled from complying with tax deadlines if it retains control over the agents responsible for tax liabilities.")

In *Boyle*, the Supreme Court "drew as bright a line as can be drawn" concluding that "[t]he failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." 469 U.S. at 248-52. In drawing that bright line, the Court stated that "the duty [of a taxpayer] is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." *Id*. at 249-50. The circumstances in which the Court stated an exception could be made included situations in which a taxpayer relied upon the advise of his accountant or attorney as to whether a tax liability exists or situations in which a taxpayer's disability renders him physically or mentally incapable of knowing, remembering, or complying with a filing deadline. *Id*. at 251-54. The embezzlement by Plaintiff's agents and their failure to file his tax return and pay his tax liability are not exceptions to this bright line rule. As demonstrated in the cases cited above, courts have repeatedly held in circumstances similar to Plaintiff's that the exception to this bright line rule is not met.

Simply hiring agents to file his tax returns and pay his tax liabilities does not demonstrate that Plaintiff exercised ordinary business care and prudence. *In re Carlson*, 126 F.3d 915, 922 (7th

Cir. 1997) ("'Ordinary care and prudence' requires more than mere delegation."). Plaintiff does not even contend that he inquired of his agents as to whether his tax returns were filed and his tax liability was paid and that he relied on their false statements that his returns were filed and taxes paid. Instead, Plaintiff simply states he "had every reason to believe [his]... taxes and tax returns were being dealt with appropriately" because "Marshall put [him] on a strict monthly spending budget, and assured [him] that she was working with Krebs to prepare and file all tax returns and pay all taxes owed" and because "[i]t was through this arrangement... that [he] paid [his] taxes for 2004 and 2005 and filed returns for 2004-2006 on a timely basis." (Vaugh Decl. at ¶ 10.) Plaintiff is mistaken. The mere delegation of this responsibility to his agents with no oversight does not demonstrate ordinary care or prudence.

Therefore, having construed the evidence in the light most favorable to Plaintiff, the court concludes there is no genuine dispute of material fact and judgment should be granted in favor of the United States as a matter of law. Plaintiff has not demonstrated that his failure to timely file his 2007 tax return or his failure to pay his 2007 tax liability were due to "reasonable cause."

## IV. CONCLUSION

For the foregoing reasons, the court grants the Government's Motion for Summary Judgment (ECF No. 18).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

June 27, 2014